UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD YANG, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:10CV208 JCH |
| ) | |
| WILLIAM MCKINNEY, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant William McKinney's Motion for Summary Judgment, filed July 7, 2011. (ECF No. 54). The matter is fully briefed and ready for disposition.

**BACKGROUND**

At all relevant times, Plaintiff Richard Yang was an inmate confined in the Missouri Department of Corrections ("MDOC"). (See Defendant's Statement of Uncontroverted Material Facts in Support of his Motion for Summary Judgment ("Defendant's Facts"), ¶ 1). Defendant William McKinney ("Dr. McKinney"), a licensed medical doctor, provided medical services on behalf of Correctional Medical Services ("CMS"), a private entity providing medical care to inmates within the MDOC. (Id., ¶¶ 2, 3).

On August 3, 2005, Plaintiff reported to sick call, complaining of a pinched nerve and pain in his left arm. (Plaintiff's Medical Records, Defendant's Exh. A, P. 2).[1] Dr. McKinney evaluated Plaintiff, including his medical history, and assessed his condition. (Id.; Defendant's Facts, ¶ 15). He

---

[1] In his Amended Complaint, Plaintiff claims Dr. McKinney falsified his medical records. (Amended Complaint, ECF No. 23, PP. 8-9). He further claims Dr. McKinney received financial incentives from CMS for denying treatment. (Id., P. 9). Plaintiff offers no evidence to support these assertions, however, and the Court finds Plaintiff's conclusory allegations insufficient to defeat Dr. McKinney's Motion for Summary Judgment.

attempted to reassure Plaintiff, and informed him that in Defendant's medical judgment, no further medical evaluation or therapy currently was indicated. (Id.).

Dr. McKinney again saw Plaintiff on September 28, 2005. (Defendant's Exh. A, P. 3; Defendant's Facts, ¶ 16). At that time, Dr. McKinney ordered a cervical x-ray, but explained to Plaintiff that he did not believe an MRI was medically indicated at that time. (Id.). Dr. McKinney further examined Plaintiff on December 21, 2006, and at that time he believed Plaintiff had tendonitis in his left arm/wrist. (Defendant's Facts, ¶ 17). He ordered an x-ray of Plaintiff's left wrist, and made a clinical decision to treat Plaintiff's condition with Naprosyn. (Id.).

On January 3, 2007, Plaintiff submitted an Informal Resolution Request ("IRR"), claiming as follows: "I have nerve pains on my left arm and hand for the last 1½ years. I've asked Doctor at least (5) times to give me proper treatment, but he always refused to give me." (Plaintiff's Grievance File, Defendant's Exh. E, P. 2). Plaintiff claimed his "serious pains" precluded him from sleeping. (Id.). Lisa Spain, the Director of Nursing at Potosi Correctional Center, responded as follows:

> Subsequent to my review and investigation, I have found the following:
>
> According to your medical record in which I believe to be true and accurate, I have found that you have been treated for your complaint of left arm and wrist pain. Dr. McKinney has seen you on August 3rd, 2005 and September 28th, 2005 for this issue. You did not turn in another MSR [medical services request] for this issue until September 2006. At this time, you were treated per nursing sick call protocol and given OTC meds. You then did not complain again until your appointment for chronic care. Dr. McKinney then saw you on December 21, 2006. At this time, you were diagnosed with tendonitis. You were being treated for this diagnosis with Naprosyn and did not report or request more until January 25th, 2007. Dr. McKinney also reports that you have full, unrestricted use of all fingers and that your distal neurovascular is intact. You have an appointment for the Naprosyn refill on February 9th, 2007.
>
> In conclusion, I cannot support your IRR. I encourage you to keep your appointment on February 9th, 2007. I also encourage you to follow Dr. McKinney's recommendations to you.

(Id., P. 3). Plaintiff followed up with an Offender Grievance, filed February 16, 2007, in which he complained his neck pain prevented him from sleeping well or turning his head to the left. (Id., P. 4). Plaintiff requested that he be given an MRI examination. (Id.). Plaintiff's grievance was denied on March 21, 2007. (Id., PP. 6-7).

In an evaluation performed February 9, 2007, Dr. McKinney noted Plaintiff had animated gestures of his arms, and was capable of rapidly moving his head/neck from side to side without evidence of pain or discomfort. (Defendant's Facts, ¶ 18). Dr. McKinney made a clinical decision to treat Plaintiff's condition with Tylenol, because Plaintiff had no neurological symptoms. (Id.).

On March 16, 2007, Plaintiff reported to sick call, complaining of nerve pain. (Defendant's Exh. A, P. 4). Dr. McKinney noted Plaintiff had full range of motion, his motor and sensory nerves were intact, and he was non-tender to firm palpation. (Id.; Defendant's Facts, ¶ 23). Based on his medical judgment, Dr. McKinney informed Plaintiff no further evaluation or therapy was indicated. (Id.).

Plaintiff again reported to Dr. McKinney on April 23, 2007. At that time, Plaintiff reported he walked up to two miles at a time, 3-4 times per week. (Defendant's Exh. A, P. 5). After noting there existed neither new information regarding Plaintiff's neck or left upper extremities, nor tenderness to palpation, Dr. McKinney renewed Plaintiff's order for a lower bunk for twelve months. (Id.; Defendant's Facts, ¶ 24).

Plaintiff returned to Dr. McKinney on August 17, 2007, complaining of severe pain in his wrist and neck. (Defendant's Exh. A, P. 6). At that time Plaintiff was working in the institution kitchen, and he reported increased discomfort when lifting heavy pans. (Id.). Dr. McKinney attempted to treat Plaintiff's condition by ordering continued lower bunk "lay-in", and adding a lifting restriction of twenty pounds. (Id.; Defendant's Facts, ¶ 26).

On December 17, 2007, Dr. McKinney saw Plaintiff for "neck pain or strain." (Defendant's Exh. A, P. 7). Dr. McKinney assessed Plaintiff's condition as hypertrophic degenerative arthritis, as per Plaintiff's x-ray in 2005, and noted Plaintiff had no radiculopathy to his arms. (Id.; Defendant's Facts, ¶ 27). After noting Plaintiff's main problem, an inability to sleep, was relieved with Ibuprofen, Dr. McKinney decided to treat the condition with Naproxen 250 mg tablets. (Id.).

On September 12, 2008, Plaintiff reported that he had experienced left sided neck pain, in the area of his trapezius, for four days. (Defendant's Exh. A, P. 8; Defendant's Facts, ¶ 28). Plaintiff did not have any neurological symptoms, and his pain was resolved with treatment of Naproxyn. (Id.). Dr. McKinney noted Plaintiff had a normal gait, was able to get on and off the exam table easily, and remained very animated during the visit, with rapid movement of his neck and arms. (Id.). After noting Plaintiff exhibited no evidence of distress, Dr. McKinney informed Plaintiff no additional evaluation or therapy was needed at that time. (Id.). He did renew Plaintiff's bottom bunk lay-in, however. (Id.).

On November 12, 2008, Plaintiff reported the same pain as on September 12, 2008. (Defendant's Exh. A, P. 9). Although Plaintiff reported the pain was constant, except when he extended his neck backwards, Dr. McKinney noted no radiculopathy, no muscle weakness, and no paresthesias of extremities. (Id.; Defendant's Facts, ¶ 29). While Dr. McKinney noted no apparent distress, and that Plaintiff still was capable of rapid movement of his head, neck and arms, he did find "soreness to palp upper portion of Lt trapezius, no palp defect." (Id.). Based on this evaluation, Dr. McKinney provided Plaintiff with a range of motion exercises to perform. (Id.). He further prescribed Naproxen for thirty days, and recommended hot showers and massage. (Id.).

On November 25, 2008, Plaintiff submitted a second IRR, complaining he often was unable to sleep at all due to neck and shoulder pain. (Defendant's Exh. E, PP. 27-28). Plaintiff

acknowledged Dr. McKinney said the pain was caused by a muscle, but stated his contrary belief that the pain was caused by pinched nerves. (Id.). As relief, Plaintiff requested the assistance of a neurologist for proper diagnosis and medical treatment. (Id.). When the IRR was not resolved (see Id., P. 30), Plaintiff filed an Offender Grievance on December 31, 2008, again requesting a referral to a specialist. (Id., PP. 31-32). Plaintiff's Grievance was denied on January 14, 2009. (Id., P. 33). Plaintiff filed an Offender Grievance Appeal on January 30, 2009 (see Id., PP. 35-37), which was denied by Jewel Cofield, Regional Manager, and Michael Sands, Assistant Regional Medical Director, on April 7, 2009, as follows:

> I understand your one original IRR complaint to be that you contend that you have neck and shoulder pain dating back to 2004. You state that you want to have a pain free life. You want to be seen/evaluated by a neurologist.
>
> Upon review of your medical record, grievance records and investigation of your concern, I found that you have been seen multiple times by the healthcare staff for your neck and back pain. Your record shows that you received a recent x-ray of your cervical spine on February 27, 2009. The results of your c-spine x-ray shows that you have had a fusion of C4, 5 and 6 in the past, degenerative changes at your C3 & 4 with minimal changes since your last films on September 30, 2005. Your record reveals that you have been seen and treated by the healthcare staff sporadically when requested over the last several years. Your record notes that you have been given appropriate medication, treatment, x-rays and assessment. Your records disclose that your physician ordered for you to perform range of motion, hot showers and massage for your neck and shoulder pain along with taking the prescribed medication. I found no medically indicated referrals to a specialist at this time.
>
> Conclusion: Given the above information, your Grievance Appeal is not supported. Your record shows that you have received on-going care and treatment for your medical issues from licensed, qualified healthcare professionals with many years of experience. Please note that CMS relies upon the independent medical judgment of the site physicians to determine what care and/or treatment is needed.

(Id., P. 38).[2]

On December 24, 2008, Dr. McKinney saw Plaintiff for continued left neck and shoulder pain. According to the medical records, Plaintiff denied any radiculopathy, and reported he slept up to eight hours without difficulty. (Defendant's Exh. A, P. 10). Plaintiff denied any muscle weakness to his left upper extremities, and reported normal fine motor control and use of his left hand and fingers. (Id.; Defendant's Facts, ¶ 30). Dr. McKinney concluded Plaintiff had chronic paresthesias, with some increasing discomfort in his upper and mid trapezius related to position, but a stable neurologic examination. (Id.). Dr. McKinney reviewed his evaluation with Plaintiff, and explained that in his opinion, additional evaluation including an MRI and/or neurosurgery consult was not necessary. (Id.). Dr. McKinney ordered Naproxen 250 mg tablets, continued supportive topical therapy, and an analgesic balm. (Id.).

On February 26, 2009, Dr. McKinney again assessed Plaintiff's condition. (Defendant's Exh. A, PP. 11-12; Defendant's Facts, ¶ 31). He noted Plaintiff's pain was positional, without radiculopathy of pain. (Id.). Plaintiff's medical records from this visit state as follows:

> 2/25/09 Mr. Yang presented to nursing stating he could not move his head/neck. He was placed in T.C.U. for observation. As per documentation of multiple nurses, Mr. Yang would say he could not move his neck, then actively begin moving neck while speaking w nurse. Nursing has document active, good ROM of neck without evidence of any discomfort when pt was not aware he was being observed. Pt has been seen up at sink, washing. He feeds himself and has been eating well.

(Defendant's Exh. A, P. 11). Despite Plaintiff's request, Dr. McKinney believed that given Plaintiff's lack of motor dysfunction, unchanged sensation and stable neuro-evaluation, neither an MRI nor a neurosurgical evaluation was currently medically necessary. (Id., PP. 11-12). Dr. McKinney

---

[2] A third IRR regarding Plaintiff's medical needs was withdrawn on September 28, 2009. (Defendant's Exh. E, PP. 42-48).

attempted to ease Plaintiff's concerns by ordering another cervical x-ray, and prescribing rest, exercise, physical therapy, patient education, an additional lay-in, Elavil/Amitriptyline 25 mg at HS for pain, and a follow-up examination in one month. (Id., P. 12; Defendant's Facts, ¶ 31).

On April 20, 2009, Dr. McKinney noted Plaintiff ambulated into the exam room at a rapid rate, with a fluid gait. (Defendant's Exh. A, P. 16; Defendant's Facts, ¶ 32). He noted Plaintiff had no difficulty removing his coat, and was able to get on and off the exam table quickly. (Id.). Finally, he noted Plaintiff remained very animated while talking, including nodding his head, rapidly turning his neck from side to side, and raising his arms with no evidence of discomfort or pain. (Id.). Dr. McKinney discontinued Plaintiff's Elavil at Plaintiff's request, continued the appropriate lay-ins, and advised Plaintiff he could return for follow-up as needed. (Id.).

On July 8, 2009, Plaintiff reported to sick call, requesting that he again be prescribed Elavil. (Defendant's Exh. A, P. 17). Dr. McKinney noted Plaintiff's condition remained stable, and he had no neurological deficit on exam. (Defendant's Facts, ¶ 33). He therefore ordered patient education, Elavil 10 mg for thirty days, continued restrictions, and a follow-up appointment in thirty days. (Id.).

Plaintiff reported for his follow-up examination on August 5, 2009. (Defendant's Exh. A, P. 18). He reported no change in his condition, and Dr. McKinney noted he continued to have a rapid, fluid gait and full range of motion in his neck. (Id.; Defendant's Facts, ¶ 34). Dr. McKinney prescribed an increased dosage of Elavil, together with a follow-up exam in one month. (Id.).

On September 2, 2009, Plaintiff reported that with Elavil he was sleeping fine, but at times felt sleepy during the day. (Defendant's Exh. A, P. 19). Plaintiff expressed his desire to discontinue Elavil, and further declined Tylenol. (Id.). After concluding Plaintiff had chronic positional neck pain that was unchanged for four years, Dr. McKinney updated Plaintiff's lay-ins, and requested a follow-up appointment in three months. (Id.; Defendant's Facts, ¶ 35). Plaintiff did follow-up on December

4, 2009, at which time Dr. McKinney noticed no change. (Defendant's Exh. A, P. 20). Dr. McKinney recommended that Plaintiff follow-up in six months, or sooner if necessary. (Id.).

Dr. McKinney saw Plaintiff on December 18, 2009, at which time Plaintiff asked to be referred for an MRI and surgical evaluation. (Defendant's Exh. A, P. 21). Dr. McKinney denied this request, together with Plaintiff's request for a special pillow. (Id.).

Plaintiff filed his original Complaint in this matter on February 3, 2010. (ECF No. 1). In his Amended Complaint, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendant William McKinney violated his Eighth Amendment rights, by demonstrating deliberate indifference to his serious medical needs.[3] (ECF No. 23). As stated above, Dr. McKinney filed the instant Motion for Summary Judgment on July 7, 2011, asserting Plaintiff was not denied treatment for his condition. (ECF No. 54).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

---

[3] Plaintiff originally named Kimberly Randolph, Jewel Cofield, and Michael Sands as Defendants in his Amended Complaint. In an Order entered November 16, 2010, the Court dismissed Plaintiff's Amended Complaint against those Defendants for failure to state a claim upon which relief can be granted. (ECF No. 24).

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The Eighth Circuit has held that, "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and one condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "To succeed on a claim of deprivation of medical care in violation of the Eighth Amendment, plaintiff must prove that defendants were deliberately indifferent to his serious medical needs." Moots v. Lombardi, 2005 WL 4541944 at *5 (E.D. Mo. Feb. 10, 2005), citing Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

> There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted). A prison official acts with the requisite deliberate indifference when that official, "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Furthermore, "[m]ere negligence or medical malpractice [is] insufficient to rise to a constitutional violation." Moots, 2005 WL 4541944 at *5, citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Upon consideration, the Court finds even assuming, arguendo, that Plaintiff could establish the existence of a serious medical need, the evidence provided by Dr. McKinney overwhelmingly supports the conclusion that he provided adequate medical care to Plaintiff. See Reynolds v. Crawford, 2007 WL 1656269 at *3 (E.D. Mo. Jun. 6, 2007). As noted above, Dr. McKinney first evaluated Plaintiff on August 3, 2005, and examined him on numerous occasions through at least December 18, 2009. The majority of these appointments were related to Plaintiff's complaints of neck, shoulder and arm pain. Dr. McKinney provided Plaintiff with physical assessments, follow-up appointments, medical records review, patient education, medications, treatment, x-rays, and various restrictions on his activities. Furthermore, based on his assessments of Plaintiff's history and present status he determined, in his own medical judgment, that Plaintiff did not require a specialist referral or MRI examination. The legitimacy of Dr. McKinney's opinion is bolstered by the submission with his motion of the Declaration of Dr. Elizabeth Conley, a licensed physician, in which she testifies as follows:

> Based on my review of Mr. Yang's medical records, I do not believe that Dr. McKinney knew of and disregarded any excessive risk of serious bodily harm regarding Mr. Yang. Dr. McKinney performed physical examinations and provided Mr. Yang with physical assessments and follow-up evaluations of his neck, shoulders, wrist, fingers, and arms. Dr. McKinney gave orders for restrictions, including, but not limited to, bottom-bunk lay-in, physical therapy, hot showers and massages. Dr. McKinney evaluated Mr. Yang for unrelated medical conditions and prescribed medication for pain control. Dr. McKinney provided Mr. Yang with education related to his overall health and maintenance and pain and kept him informed as to why Dr.

> McKinney, based upon his evaluations and medical judgment, felt that Mr. Yang did not need to be referred to a specialist and/or did not need an MRI. Dr. McKinney never placed Mr. Yang at excessive risk of serious bodily harm, nor ever disregarded such risk. Dr. McKinney never denied Mr. Yang any necessary treatment or medical care. The care which Dr. McKinney provided to Mr. Yang fell well within the standard of care in the community.

(Conley Declaration, ¶¶ 6-13).

The Court notes Plaintiff's main complaint appears to be that he should have been referred for an MRI and/or neurosurgery consult. "This assertion is insufficient, both due to a lack of evidence to support it, and because it asks this Court to second guess Defendant's medical decision that [such referral] was unnecessary."[4] Reynolds, 2007 WL 1656269 at *3.

> Plaintiff's condition was continually monitored, and this Court will not question the medical decisions that were made with regards to Plaintiff's treatment. Furthermore, Plaintiff's disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.

Id. (internal quotations and citations omitted). See also Bell v. Hakala, 2011 WL 2671826 at *5 (E.D. Mo. Jul. 8, 2011) (citations omitted) ("Medical care so inappropriate as to evince intentional maltreatment or a refusal to provide essential care violates the Eighth Amendment, but a mere disagreement with the course of medical treatment does not constitute a claim of deliberate indifference."). Under these circumstances, the Court finds no evidence that Dr. McKinney was deliberately indifferent to Plaintiff's serious medical needs. Defendant's Motion for Summary Judgment must therefore be granted. See Dulany, 132 F.3d at 1240 ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was

---

[4] In his response to Dr. McKinney's Motion for Summary Judgment, Plaintiff claims his subsequent provider, Dr. Michael Hakala, referred him to a specialist who performed an MRI and recommended neurological surgery. (Plaintiff's Response to Defendant's Motion for Summary Judgment, PP. 8-9). While Plaintiff may have had an MRI, the Court notes that Dr. McKinney provides the Declaration of Dr. Hakala, in which he testifies first, that nobody has ever told Plaintiff he needed surgery, and second, that based on his review Dr. McKinney's care fell well within the standard of care in the community. (See ECF No. 58-1).

- 11 -

adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant William McKinney's Motion for Summary Judgment (ECF No. 54) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this  25th  day of August, 2011.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE